| UNITED STATES DISTRICT COURT | | EASTERN DISTRICT OF TEXAS |
|---|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:16-CR-89 |
| | § | |
| RYAN LEE HASTINGS | § | |
| | § | |

**MEMORANDUM AND ORDER ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Came on for consideration the report of the United States Magistrate Judge (the "Report") in this action, this matter having been heretofore referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636.

On October 31, 2016, Ryan Lee Hastings ("Hastings") filed a Motion to Suppress (#21). The Magistrate Judge held hearings on the issue of suppression on November 21, 2016, and November 29, 2016. On January 20, 2017, the Report (#44) was entered containing a recommendation that Defendant's Motion to Suppress be granted. On February 3, 2017, the Government filed objections (#45) raising six issues, each of which is addressed below. Hastings filed a response (#47) on February 13, 2017.

The court has made a *de novo* review of the objections raised by the Government, and is of the opinion that the findings and conclusions of the Magistrate Judge are correct and the objections are without merit as to the ultimate findings of the Magistrate Judge. The court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of this court.

I.   Analysis

   A.   Characterization of Testimony

The Government's initial objection concerns the characterization of testimony in the Report. *See* Doc. No. 45, at 2-4. The Court notes that as the finder of fact, the Magistrate Judge has discretion to give weight to the testimony and evidence presented, and it appears that the Magistrate Judge exercised that discretion appropriately here. As to the specific objection concerning the testimony of Officer Nathan Reed ("Officer Reed"), the Government does not rely upon testimony from Officer Reed but from another officer.[1] The actual testimony by Officer Reed supports the Magistrate Judge's findings and conclusions. *See* Doc. No. 37, at 51, 60.

The Court similarly finds the Government's remaining arguments contained in this objection are not well taken in that the Magistrate Judge's findings and conclusions are consistent with the evidence adduced in this case, as demonstrated by the citations contained in the Report. Accordingly, this objection is overruled.

   B.   An Imminent Safety Risk

The Government contends that "suicide by cop" is an imminent safety risk. The "possible threat an individual poses to himself is not a blanket grant, but rather, '[l]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from *imminent* injury.'" *Rockwell v. Brown*, 664 F.3d 985, 994 (5th Cir. 2011) (emphasis added) (citations omitted). "*Immediate* safety risks to police officers and others are

---

[1] The Government cites to Officer Christopher Penland's ("Officer Penland") testimony regarding the contents of the BOLO (a notice to "Be On the Lookout") rather than that of Officer Reed. Officer Penland did not testify regarding Officer Reed's knowledge of the contents of the BOLO.

2

exigent circumstances that may excuse a warrantless entry into a residence." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 421 (5th Cir. 2008) (emphasis added).

While the Government presents definitions of the term "suicide by cop," it fails to demonstrate that the mere possibility of suicide by cop presents an *imminent* safety risk. The Government cites *Rockwell* as supporting an officer's entry into an individual's room. 664 F.3d at 985. *Rockwell*, however, is readily distinguishable. In *Rockwell*, the court found the officers were entitled to qualified immunity following a warrantless entry into a locked door to a private bedroom of a suspect who was bi-polar, schizophrenic, and off his medication. At the time the officers entered the room, the suspect had "barricaded himself in his room, and his mental instability was becoming increasingly apparent as he pounded the walls, shook the door, and hurled foul threats at the officers." *See id.* at 988, 995.

Here, officers were aware Hastings suffers from mental illness and had discussed suicide at some point in his life, but unlike *Rockwell*, Hastings had not barricaded himself in a room, was not displaying any increasing mental instability, and was not threatening officers or others. The officers entered Hastings's room without communicating with him or gauging his mental state and thus, this objection is overruled.

The Government invokes the inherent danger of suicide and, in particular, suicide by cop, but suicide by cop requires engagement with law enforcement. The officers chose the time and place that Hastings encountered law enforcement. The Government fails to show that any threat by Hastings to himself or the officers was imminent at the time they entered the hotel room.

C.  Inevitable Discovery

The Government objects to "the finding that the evidence would not have been discovered in the absence of warrantless entry into [Hastings's] hotel room." The Magistrate Judge found,

3

not that the evidence *would not* have been discovered, but that the Government "fails to assert *how* any of [the] evidence *would* have been discovered by lawful means in the absence of initial police misconduct." Doc. No. 44, at 19 (emphasis added). For the inevitable discovery exception to the exclusionary rule to apply, the Government must prove by a preponderance of the evidence that "(1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct, and (2) the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *United States v. Lamas*, 930 F.2d 1099, 1102 (5th Cir. 1991).

The Government asserts that officers would have secured Hastings's weapons regardless of when they encountered him, but does not speak to the issue of discovery of the evidence by lawful means. The Government also presents, as an alternate line of investigation, a plan suggested by U.S. Secret Service Special Agent Todd Kinkle to meet with Hastings upon his return home. This plan was not actively pursued as an alternative, but was abandoned in favor of engaging Hastings in Oklahoma. The inevitable discovery exception does not apply in this case, and this objection is overruled.

    D.    <u>Specificity Regarding the Suppressed Evidence</u>

The Government objects to the lack of specificity of evidence that the Magistrate Judge recommended be suppressed. The Magistrate Judge recommended that "all evidence, physical and testimonial, obtained or derived from or through or as a result of the unlawful search, seizure, interrogation, arrest and detention of Hastings which occurred on June 11, 2016, in Pryor, Oklahoma, be suppressed and excluded." Doc. No. 44, at 28. The rifle, cell phone, laptop, notes in the car, and the GPS navigation system were all obtained from or through or as a result of the unlawful search, seizure, interrogation, arrest, and detention of Hastings. The car was not searched

when it was discovered but, rather, after it was towed to the police department following Hastings's detention.[2] Officer Penland testified that he searched the vehicle because he believed its contents might present a danger to the police department, which was only a concern because the vehicle was towed into proximity of the police department as a result of Hastings's detention. The evidence to be suppressed is adequately described in the Report; therefore, this objection is overruled.

      E.      Whether Hastings' Statements Were Voluntary

The Government objects to the Magistrate Judge's finding that Hastings's statements were not voluntary. Courts consider several factors in determining if the taint of an illegal arrest is purged: (1) temporal proximity of the arrest and the confession, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct. *See Taylor v. Alabama*, 457 U.S. 687, 689 (1982). The Government refers the court to its arguments in previous briefings, but only details a specific objection on the issue of flagrancy.

The Government argues that the officers' conduct "may displease some reviewing courts," but does not rise to the level of flagrant conduct. The court, however, finds the Government's argument unconvincing. Many of the officers' actions during the investigation—before entry into the hotel room, during Hastings's detention and interrogation, and when testifying before the Magistrate Judge—reflect a lack of concern for Hastings's Fourth Amendment rights. Moreover, the length of time between Hastings's detention and his interview militates in favor of suppression, and there was no intervening event that would purge the taint of the initial illegal entry. Because

---

[2] Hastings's keys were taken from his hotel room, and the tow truck driver unlocked the car to load it onto the back of his truck and to unload it. Therefore, when Officer Penland searched the vehicle, it was unlocked only as a result of the detention of Hastings.

5

the Government failed to meet its burden of proving that Hastings's statements are admissible, the objection is overruled.

F. <u>Findings as to Officer Penland and Special Agent Ward</u>

The Government objects to the finding of lack of credibility regarding the testimony of Officer Penland and Special Agent Ward, arguing that the Magistrate Judge's use of the term "credibility" connotes intentional falsehood. The court disagrees, as the Report specifically acknowledges that the inconsistencies in the testimony could have been the result of merely careless errors. *See* Doc. No. 44, at 25. Neither this court nor the Magistrate Judge attacks the general character or credibility of Officer Penland or Special Agent Ward. The court simply determines that specific testimony and reports stating that part of the justification for detaining Hastings was information that Hastings was traveling to Green Bay, Wisconsin, to kill President Barack Obama and Presidential Candidate Hillary Clinton were not credible. Accordingly, the objection is overruled.

II. <u>Conclusion</u>

It is therefore ORDERED that Defendant's Motion to Suppress (#21) is GRANTED.

SIGNED at Beaumont, Texas, this 23rd day of March, 2017.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE